IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN RUFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-05371 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| JEFFREY K. HAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Carolyn Ruff organized a protest and boycott of Defendant Missha Inc.'s ("Missha") store in Chicago ("Store") after seeing a video of an employee of a different Missha store attacking a customer. Ruff claims that Missha responded to her protest with a campaign of harassment that included multiple calls to the Chicago Police Department ("CPD"). And as a result, Ruff has brought claims under 42 U.S.C. § 1983 and Illinois state law against Missha and several individuals employed by or otherwise associated with the Store (collectively, "Missha Defendants"), as well as Defendant City of Chicago and several CPD officers (collectively, "City Defendants"). Now, Missha Defendants and City Defendants each have filed motions to dismiss claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 61, 63.) Missha Defendants seek dismissal of all claims directed toward them, while City Defendants seek dismissal of all but two of the claims against them. For the reasons that follow, both motions are granted in part and denied in part.

**BACKGROUND**

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the complaint as true and views those facts in the light most favorable to Ruff as the non-moving

party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint alleges as follows.

After Ruff viewed a video of what she believed to be a racist attack against a customer at the hands of the manager of a Missha store in Charlotte, North Carolina, she decided to organize a boycott of the Store in solidarity. (Compl. ¶¶ 11–13, Dkt. No. 1.) Beginning in March 2017, Ruff led peaceful protests outside the Store. (*Id.* ¶¶ 14, 18.) Almost immediately, the protests were met with resistance from the Store's employees. (*Id.* ¶ 14.) Ruff alleges that the Store's employees and their relatives violently confronted her and other protestors on multiple occasions and made threats of further violence if the protests continued. (*Id.* ¶¶ 14–24.)

The first event relevant to the present lawsuit occurred on August 8, 2017, when Defendant Archie Lewis, a Store employee, called the police and claimed that Ruff threatened to have him killed. (*Id.* ¶¶ 7, 25.) Based on Lewis's report, CPD officers Defendants J.N. Parker and M.A. Escobedo arrested Ruff and charged her with disorderly conduct. (*Id.* ¶¶ 9, 25.) Two days later, Lewis obtained a restraining order against Ruff that required her to stay more than 500 feet away from the Store. (*Id.* ¶ 26.) The disorderly conduct charge against Ruff was ultimately non-suited on September 21, 2017, after Lewis failed to appear in court. (*Id.* ¶ 27.) As a result, the restraining order against Ruff was lifted effective as of that date. (*Id.*)

At the conclusion of an October 23, 2017 protest outside the Store, Defendant Missha employee Sam ("Sam"),[1] a Store employee, followed Ruff to a nearby parking lot and harassed her as she sat in her car. (*Id.* ¶ 29.) Sam then called the police and claimed that Ruff was violating the restraining order, even though it was no longer in effect. (*Id.*) When the Defendant CPD

---

[1] In preparing her complaint, Ruff apparently lacked sufficient information to identify certain Defendants by their full names and therefore many Defendants are named by reference to the limited identifying information she possessed at the time of filing.

2

officers identified as Ofc. Lowrey and Ofc. Lowrey's partner arrived, they immediately grabbed Ruff and attempted to handcuff her, injuring her arm in the process. (*Id.*) But the officers declined to arrest Ruff once they learned that the restraining order had been lifted. (*Id.*)

On May 31, 2019, Lewis, Sam, and Defendant Unknown Missha Manager ("Store Manager"), again called the police to report that Ruff was harassing the Store's customers. (*Id.* ¶ 31.) Several officers responded to the call, including Defendants James Gochee, Edwin Drowns, and Brenda[2] Thomas. (*Id.* ¶¶ 32, 36.) Store Manager then emerged from the store and claimed that he had received a call from Ruff's sister informing him that Ruff had a mental disorder. (*Id.* ¶ 33.) Gochee then approached Ruff and asked whether she had identification or a permit. (*Id.* ¶ 34.) When he learned that Ruff did not have a permit, Gochee asked Ruff to put down her phone and informed her that she was being arrested for protesting without a permit. (*Id.* ¶ 35.) Ruff refused and claimed that she did not need a permit for her protest. (*Id.*) This led Gochee and Drowns to grab Ruff and attempt to take her phone. (*Id.* ¶ 36.) At some point, Thomas approached the scuffle and confiscated Ruff's phone. (*Id.* ¶ 38.) Several officers then tackled Ruff to the ground, causing injuries to her shoulder, chest, and wrists. (*Id.* ¶ 39.) They then handcuffed Ruff and took her to a nearby hospital to be evaluated for a mental illness. (*Id.*)

As a result of these incidents, Ruff filed the present action. Her 11-count[3] complaint sets forth several § 1983 and Illinois state-law claims against Defendants. Counts I and II assert claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") against Lewis and Sam, respectively. Count III alleges that Store Manager

---

[2] The complaint names "Breda" Thomas as a Defendant but because her attorneys use the name Brenda, the Court assumes that Brenda is the correct first name for that Defendant.

[3] Following Count III, the next seven counts in the complaint are all numbered as Count V, and the final count is numbered as Count IV. For the sake of clarity, when referring to one of those eight counts, the Court will treat the count as if it was numbered sequentially. Thus, the first Count V will instead be referred to as Count IV, the second Count V as Count V, the third Count V as Count VI, and so on.

3

defamed Ruff. In Counts IV, VI, and VIII, Ruff asserts claims under § 1983 for violations of her Fourth Amendment rights against various configurations of the Defendant CPD officers and she alleges accompanying failure-to-intervene claims at Counts V, VII, and IX. Count X asserts a civil conspiracy claim against certain Defendant CPD officers and Missha employee Defendants. And finally, Count XI seeks to hold Missha and Defendant Jeffrey Han[4] vicariously liable for the torts of the Store's employees.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Both City Defendants and Missha Defendants seek dismissal of all claims arising out of events prior to January 2018 on the ground that the claims are barred by the applicable statute of limitations. Insofar as the claims are not time-barred, City Defendants contend that the false arrest and failure-to-intervene claims against Parker and Escobedo set forth at Counts IV and V fail on the merits. And while City Defendants do not assert that the conspiracy claim at Count X is time-barred, they nonetheless argue that the claim is insufficiently pleaded and must be dismissed.

---

[4] The complaint never identifies Jeffrey Han's role at Missha. But given that Ruff seeks to hold him vicariously liable for the torts of the Store's employees, the Court assumes that Han is the owner of the Store.

4

Missha Defendants[5] similarly contend that, to the extent that the claims against them are not time-barred, they nonetheless fail to state a plausible claim to relief. The Court will first address the statute of limitations issue before turning to the merits of the individual claims.

### I. Statute of Limitations

The statute of limitations provides an affirmative defense. *E.g.*, *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Generally, a complaint need not state all facts necessary to overcome an affirmative defense, which is why it is "irregular to dismiss a claim as untimely under Rule 12(b)(6)." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (internal quotation marks omitted). Dismissal on statute of limitations grounds at the pleading stage may be warranted, however, when a plaintiff pleads facts that effectively establish the defense. *Id*. The statute of limitations for a § 1983 claim is "governed by the personal injury laws of the state" in which the injury occurred. *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). In the present case, the injury occurred in Illinois, so the statute of limitations is two years. *See* 735 ILCS 5/13-202. The IIED and NIED claims alleged against Missha Defendants are also governed by the same two-year statute of limitations. *Vazquez v. Suncast Corp.*, No. 18 CV 05002, 2019 WL 2576554, at *7 (N.D. Ill. June 24, 2019).

According to Defendants, because Ruff's complaint was deemed filed as of January 6, 2020, any claims predating January 6, 2018 are time-barred. In response, Ruff argues that the statute of limitations stopped running when the Court Clerk first received her complaint on August 8, 2019. While Ruff did first submit her complaint to this Court on August 8, 2019, she

---

[5] Missha Defendants' motion is brought only on behalf of Missha and Han, as the Store employees named as Defendants—Lewis, Sam, and Store Manager—have not been served. However, Missha Defendants' motion properly seeks dismissal of Counts I, II, III, and X, even though they set forth claims based on the conduct of one or more of Lewis, Sam, or Store Manager, because Count XI seeks to hold Missha and Han liable for their employees' torts under a *respondeat superior* theory.

failed to contemporaneously pay the filing fee or file a petition for leave to proceed *in forma pauperis*. Only on August 31, 2019, did Ruff file a petition for leave to proceed *in forma pauperis*, which she amended on October 31, 2019. (Dkt. Nos. 6–7.) Ruff then paid the full filing fee on January 2, 2020. (Dkt. No. 8.) Consequently, the Court denied her petition to proceed *in forma pauperis* as moot on January 6, 2020. (Dkt. No. 9.) Yet it took Ruff until July 23, 2020, to complete service on all City Defendants along with Missha and Han. (Dkt. Nos. 29–31.)

As a result of Ruff's delayed service, City Defendants and Missha Defendants both filed motions to dismiss for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). In deciding those motions, the Court resolved when the complaint was "filed" so as to commence the 90-day service period provided under Federal Rule of Civil Procedure 4(m). The Court concluded that, for purposes of service of process, Ruff's complaint should be treated as filed on January 6, 2020, the date on which the Court denied the pending *in forma pauperis* petition as moot due to Ruff's full payment of the filing fee.[6] (Dkt. No. 53.) Now, City Defendants and Missha Defendants argue that because the Court concluded that Ruff's complaint was filed on January 6, 2020, for purposes of service of process, that must also be the date that her complaint was filed for purposes of arresting the statute of limitations, rather than the August 8, 2019 date on which the Court Clerk received the complaint.

"The timeliness of an action based on federal-question jurisdiction turns on the date the action was commenced in accordance with Rule 3 of the Federal Rules of Civil Procedure." *Farley v. Koepp*, 788 F.3d 681, 684 (7th Cir. 2015). That is the case even in § 1983 actions where the limitations period is borrowed from state law. *Id.* Under Rule 3, "[a] civil action is commenced by filing a complaint with the court." Federal Rule of Civil Procedure 5(d)(2) further

---

[6] Even though Ruff did not timely serve Defendants within 90 days of January 6, 2020, the Court ultimately decided to excuse Ruff's delayed service.

explains that for purposes of Rule 3, "[a] paper . . . is filed by delivering it . . . to the clerk." Moreover, Rule 5(d)(4) provides that "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." Finally, under Federal Rule of Civil Procedure 83(a)(2), "[a] local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Reading those Rules together, the Seventh Circuit has concluded that "delivery to the clerk is of paramount importance" in determining when a filing has been made and "requirements of form—whether in the federal or local rules—are insufficient to disqualify a filing." *Farley*, 788 F.3d at 685 (internal quotation marks omitted).

Most importantly, for present purposes, the Seventh Circuit has held that "local rules and practice cannot defeat a right, [such as] a right to arrest the running of the statute of limitations by filing a complaint in the district court, that is conferred by the national rules." *Id.* (internal quotation marks omitted). It has therefore concluded that a "complaint is 'filed' for purposes of arresting a statute of limitations when the clerk receives the complaint, not when it is formally filed in compliance with all applicable rules involving filing fees and the like." *Id.* (quoting *Robinson v. Doe*, 272 F.3d 921, 922–23 (7th Cir. 2001)). Thus, in *Robinson*, the Seventh Circuit determined that a local rule requiring that a complaint be accompanied by either a filing fee or a motion to proceed *in forma pauperis* "could not compress the time within which the plaintiff, once he filed the complaint—albeit not in proper form because unaccompanied by the fee or in lieu thereof by a motion for leave to proceed in forma pauperis—could sue." *Robinson*, 272 F.3d at 923. Likewise, here, the Northern District of Illinois's Local Rule 3.3(b) also requires a complaint to be accompanied by either a filing fee or an *in forma pauperis* petition. But, under Seventh Circuit precedent, Ruff's failure to comply fully with that rule cannot preclude the

7

suspension of the statute of limitations upon the Court Clerk's receipt of her complaint on August 8, 2019. While, given the circumstances here, that creates a curious result in which "filed" means something different when used in the context of service of process under Rule 4(m) than it does under Rules 3 and 5, the Seventh Circuit has acknowledged that its precedents yield such a result. *See Williams-Guice v. Bd. of Educ. of City of Chi.*, 45 F.3d 161, 162 (7th Cir. 1995). For that reason, the Court declines to dismiss as time-barred any claims arising out of events predating January 6, 2018 so long as they occurred on or after August 8, 2017.

## II. False Arrest and Failure-to-Intervene Claims Against Parker and Escobedo

In Count IV, Ruff contends that Parker and Escobedo subjected her to an unreasonable search and seizure in violation of the Fourth Amendment when they arrested her on August 8, 2017 and charged her with disorderly conduct based on Lewis's claim that Ruff threatened his life. Relatedly, Count V seeks to hold both Parker and Escobedo liable for their failure to intervene to prevent the violation of Ruff's constitutional rights.

A § 1983 false arrest claim requires a plaintiff to show that she was arrested without probable cause. *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012). Thus, "[p]robable cause to arrest is an absolute defense to any claim under [§] 1983 against police officers for wrongful arrest." *Id.* (internal quotation marks omitted). Probable cause for an arrest "exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013). "A court evaluates probable cause not with the benefit of hindsight, and not on the facts as perceived by an omniscient observer, but on the facts as they appeared to a reasonable person in the

8

defendant's position, even if that reasonable belief turned out to be incorrect." *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010).

In evaluating whether Parker and Escobedo had probable cause, the Court must consider the criminal violation that the officers believed Ruff had committed. *Humphrey v. Staszak*, 148 F.3d 719, 726 (7th Cir. 1998); *see also Stokes*, 599 F.3d at 622 ("A police officer's probable cause determination depends on the elements of the applicable criminal statute."). Here, the officers arrested and charged Ruff with disorderly conduct. In Illinois, "[a] person commits disorderly conduct when he or she knowingly . . . [d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Parker and Escobedo determined that there was probable cause to believe that Ruff committed this offense after they were informed by Lewis that Ruff had threatened to have him killed. Generally, a "putative victim's complaint . . . suffices to establish probable cause so long as the complaint would not lead a reasonable officer to be suspicious." *Dewar v. Chi. Police Dep't*, No. 16 C 2287, 2019 WL 214932, at *3 (N.D. Ill. Jan. 16, 2019). Nothing in Ruff's complaint in this case suggests that Parker and Escobedo had any reason to be suspicious of Lewis's complaint. Thus, the question is whether the officers had probable cause to believe that Ruff's threat constituted disorderly conduct.

The Illinois Supreme Court has observed that the disorderly conduct offense "is intended to guard against an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification." *People v. Davis*, 413 N.E.2d 413, 415 (Ill. 1980) (internal quotation marks omitted). Courts have found that "[a]n arrest for disorderly conduct is justified when the defendant directly harasses or threatens other people." *Reher v. Vivo*, 656 F.3d 772, 777 (7th Cir. 2011) (citing *In re D.W.*, 502 N.E.2d 419, 420–21 (Ill. App. Ct. 1986)); *see also People*

9

*v. Pence*, 100 N.E.3d 218, 222 (Ill. App. Ct. 2018) ("Generally, to breach the peace, a defendant's conduct must threaten another or have an effect on the surrounding crowd." (internal quotation marks omitted)). Accordingly, threats of bodily harm, such as a threat to "kick [the victim's] ass," *In re D.W.*, 502 N.E.2d at 420–21, or to kill a person's father, *Ellwood v. City of Chicago*, No. 08 C 4586, 2014 WL 883553, at *7 (N.D. Ill. Mar. 6, 2014), can support a disorderly conduct charge. Likewise, based on the allegations here, Parker and Escobedo had reason to believe that Ruff threatened violence against Lewis, thereby giving them probable cause to arrest Ruff for disorderly conduct.

Consequently, the false arrest claims against Parker and Escobedo set forth at Count IV are dismissed. And because Ruff fails to plead a constitutional violation at Count IV, the accompanying failure-to-intervene claim at Count V must also be dismissed. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation . . . .").

### III. IIED and NIED Claims Against Missha Defendants

Missha Defendants seek to dismiss the IIED and NIED claims brought against Lewis in Count I and against Sam in Count II. Both counts allege that Lewis and Sam, respectively, "waged a campaign of terror" against Ruff in retaliation for her protests against Missha. (Compl. ¶¶ 43, 45.) Specifically, over an approximately two-year period, Lewis and Sam repeatedly threatened Ruff and called the police on her multiple times, which caused her to suffer from post-traumatic stress disorder.

In Illinois, an IIED claim requires a plaintiff to allege: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe

10

emotional distress." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). Extreme and outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Rather, the conduct "must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80–81 (Ill. 2003).

Missha Defendants assert that none of the allegations in the complaint suffice to plead extreme and outrageous conduct on the part of any Missha Defendant. Ruff's only response is to claim, without legal support, that "the complaint alleges actions against the plaintiff that are clearly more than trivialities that resulted in serious trauma to the plaintiff." (Pl.'s Opp'n to Missha Defs.' Mot. to Dismiss at 3, Dkt. No. 71.) Ruff has waived her argument by only mentioning it in such a conclusory and unsupported manner, and the IIED claims could be dismissed for that reason alone. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ."). But in any case, Ruff's allegations do not suffice to plead extreme and outrageous conduct.

While Ruff asserts that Lewis and Sam's harassment included threats, "threats" are among the types of conduct that generally do not give rise to an IIED claim. While the fact that Lewis and Sam each made multiple threats against Ruff might potentially plead extreme and outrageous conduct, *e.g.*, *Kidney Cancer Ass'n v. North Shore Community Bank & Trust Co.*, 869 N.E.2d 186, 193 (Ill. App. Ct. 2007) ("[I]t is often the cumulative nature of the acts that give rise to a cause of action for [IIED]."), Ruff's allegations concerning Lewis and Sam provide few details as to the substance of their threats. Without more detail regarding the nature of their threats, the

11

Court cannot conclude that Ruff adequately pleaded that Lewis and Sam's course of threatening conduct met the high bar of extreme and outrageous conduct.

Ruff also alleges that Lewis and Sam's extreme and outrageous conduct involved repeated calls to the police in response to Ruff's protests outside the Store. But even "making a false police report is not necessarily sufficient for an IIED claim." *Rusinowski v. Village of Hillside*, 835 F. Supp. 2d 641, 656 (N.D. Ill. 2011); *see also Schiller v. Mitchell*, 828 N.E.2d 323, 335 (Ill. App. Ct. 2005) ("We do not believe that the body of law supports plaintiffs' contention that making reports to the police and other officials constitutes extreme and outrageous conduct."); *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1109 (Ill. App. Ct. 1991) (concluding that the plaintiff's allegation that the defendant knowingly made false accusations about the plaintiff to the police did not adequately plead extreme and outrageous conduct). Thus, the IIED claims are dismissed as insufficiently pleaded.

Turning to the NIED claims, in Illinois, "a direct victim of alleged [NIED] must satisfy the 'impact' rule." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 703 (7th Cir. 2009). "Under the impact rule, a direct victim may not recover for emotional distress suffered as a result of the defendant's alleged negligence unless the emotional distress 'was accompanied by a contemporaneous physical injury to or impact on the plaintiff.'" *Id.* (quoting *Rickey v. Chi. Transit Auth.*, 457 N.E.2d 1, 2 (Ill. 1983)). Missha Defendants argue that Ruff failed to plead any physical injury that accompanied her emotional distress. Similarly, the Court cannot discern any contemporaneous physical injury from the complaint. Ultimately, Ruff's response to Missha Defendants' motion to dismiss does not contain any argument regarding the NIED claims and therefore she has waived her arguments against dismissal of those claims.

12

## IV. Defamation Against Missha Defendants

Ruff alleges in Count III that Store Manager defamed her on May 31, 2019 when he told police officers that he heard from Ruff's sister that Ruff had a mental disorder. In Illinois, a "statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers the person in the eyes of the community or deters third persons from associating with [him]." *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). To state a defamation claim, a plaintiff must allege facts showing: (1) a false statement by the defendant about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) that publication caused damages. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006).

There are two recognized types of defamatory statements in Illinois: defamation *per se* and defamation *per quod*. *Naleway v. Agnich*, 897 N.E.2d 902, 908 (Ill. App. Ct. 2008). A defamatory statement is actionable *per se* where "its harm is obvious and apparent on its face." *Solaia Tech.*, 852 N.E.2d at 839. Illinois recognizes five categories of statements considered defamatory *per se*:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Id.* On the other hand, a statement may be defamatory *per quod* where the statement is either "defamatory on its face, but does not fall within one of the limited categories of statements that are actionable *per se*," or not defamatory on its face but can be shown to have injurious meaning by resort to extrinsic evidence. *Bryson*, 672 N.E.2d at 1221. Unlike in a defamation *per se* action, in a *per quod* action, the plaintiff must plead special damages from the statement—meaning

13

"actual damage to her reputation and pecuniary loss resulting from the defamatory statement." *Id.* at 1222.

Although Missha Defendants argue that Ruff's defamation claim must be dismissed because Store Manager's statement is a non-actionable statement of opinion, *see, e.g.*, *Jacobson v. Gimbel*, 986 N.E.2d 1262, 1273 (Ill. App. Ct. 2013) ("A statement that is otherwise defamatory is protected under the first amendment, if the statement is an expression of the speaker's opinion."), there is a more fundamental problem with the claim. While Ruff fails to identify whether she is bringing a claim of defamation *per se* or *per quod*, the statements upon which she bases her claim are not sufficient either way.

To the extent Ruff is pursuing a claim of defamation *per se*, the Store Manager's statement does not fit any of the five categories of statements that are defamatory *per se*. Certainly, the claim that Ruff has a mental disorder does not fit into categories (1), (2), or (5). Moreover, having some unspecified mental disorder does not necessarily mean that a person is unable to perform her employment with integrity or otherwise lacks ability in her profession, such that the statement fits into categories (3) or (4). In any case, for a statement to fit in those either of those two categories, it must "be related to job performance; to succeed, the plaintiff must have been accused of lacking **ability in his trade** or doing something bad **in the course of carrying out his job**." *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). Yet the Store Manager's statement makes no mention of Ruff's employment or profession and the complaint does not even identify what Ruff does for a living. Thus, while the statement might be viewed as damaging to Ruff's reputation, that does not make it defamatory *per se*. *Id.* ("[A]ttacks related to personal integrity and character have not been deemed defamatory *per se*.").

14

Because Ruff fails to allege a statement that is defamatory *per se*, to proceed, she must adequately plead defamation *per quod*. As discussed above, that requires her to plead special damages, or "pecuniary losses resulting from the defamatory statement." *Tunca v. Painter*, 965 N.E.2d 1237, 1253 (Ill. App. Ct. 2012). "General allegations, such as damage to an individual's health or reputation, economic loss, and emotional distress are insufficient to support an action *per quod*." *Schaffer v. Zekman*, 554 N.E.2d 988, 992 (Ill. App. Ct. 1990). Rather, the complaint must "itemize [the plaintiff's losses] or plead specific damages of actual financial injury." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003). But Ruff's complaint is devoid of allegations of special damages. For that reason, she cannot state a claim for defamation *per quod*.

In sum, Ruff fails to state a defamation claim because the alleged defamatory statement is not defamatory *per se* and she does not allege actual damages resulting from the statement as necessary to state a claim for defamation *per quod*. Consequently, Ruff's defamation claim at Count III is dismissed.

    **V.    Civil Conspiracy**

Count X of Ruff's complaint alleges a civil conspiracy between certain Defendant CPD officers and Store employees Lewis, Sam, and Store Manager. Specifically, Ruff claims that on May 31, 2019, these Defendants conspired to prevent her from continuing her protest activities outside the Store by physically removing her from the premises and taking her to a nearby hospital for a mental health evaluation.

In Illinois, to state a civil conspiracy claim, a plaintiff must allege: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators

15

in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). An agreement is a "necessary and important element" of a civil conspiracy claim. *Id.* (internal quotation marks omitted).

Aside from a conclusory allegation that the named CPD officers conspired with Lewis, Sam, and Store Manager, Ruff alleges no facts from which it can be inferred that Defendants acted with a common, unlawful purpose on May 31, 2019. The complaint alleges only one interaction occurring that day between any Store employee and Defendant CPD officer—the allegation that Store Manager told unspecified police officers that he heard from Ruff's sister that Ruff had a mental disorder. (Compl. ¶¶ 33, 47.) But the existence of an explicit or implicit understanding among the alleged conspirators cannot reasonably be inferred from that single interaction alone. *See, e.g.*, *LoggerHead Tools, LLC v. Sears Holding Corp.*, 19 F. Supp. 3d 775, 783 (N.D. Ill. 2013) ("To be liable for civil conspiracy in Illinois, a defendant must understand 'the general objectives of the conspiratorial scheme, accept them, and agree, either explicitly or implicitly to do its part to further those objects.'" (quoting *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994))). For that reason, the civil conspiracy claim is dismissed.

  **VI.** ***Respondeat Superior* Liability of Missha and Han**

Finally, Count XI of Ruff's complaint seeks to hold Missha and Han vicariously liable for the torts of their agents, Store employees Lewis, Sam, and Store Manager. In Illinois, *respondeat superior* liability "requires showing that (1) a principal/agent, master/servant, or employer/employee relationship existed; (2) the principal controlled or had the right to control the conduct of the alleged employee or agent; and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment." *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. 2012). Where the underlying claim against the agent or employee is not viable, however,

there is no independent basis for holding the employer vicariously liable. *E.g.*, *Turner v. M.B. Fin. Bank*, No. 14-cv-9880, 2017 WL 4390367, at *6 (N.D. Ill. Oct. 3, 2017). Since the underlying state-law claims against Lewis, Sam, and Store Manager have been dismissed, there is no basis for Missha and Han's vicarious liability. Count XI therefore is dismissed.

## CONCLUSION

For the foregoing reasons, City Defendants' and Missha Defendants' motions to dismiss (Dkt. Nos. 61, 63) are granted in part and denied in part. Both motions are denied to the extent they seek dismissal of claims on statute of limitations grounds. City Defendants' motion is granted as to Counts IV, V, and X; those claims are dismissed without prejudice for failure to state a claim. Missha Defendants' motion is granted as to Counts I, II, III, X, and XI, and those claims are also dismissed for failure to state a claim. Missha Defendants contend that the claims against them should be dismissed with prejudice. But claims dismissed from a plaintiff's original complaint under Rule 12(b)(6) ordinally should be dismissed without prejudice. *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 310 (7th Cir. 2018). Accordingly, the Court will allow Ruff to replead the dismissed claims against City Defendants and Missha Defendants if she believes she can state viable causes of action.

ENTERED:

Dated: March 14, 2022

_____
Andrea R. Wood
United States District Judge

17