IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN RUFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-05371 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| JEFFREY K. HAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carolyn Ruff organized a protest and boycott of Defendant Missha Inc.'s ("Missha") store in Chicago ("Store") after seeing a video of an employee of a different Missha store attacking a customer. Ruff claims that Missha responded to her protest with a campaign of harassment that included multiple calls to the Chicago Police Department ("CPD"). As a result, Ruff has brought claims under 42 U.S.C. § 1983 and Illinois state law against Missha and several individuals employed by or otherwise associated with the Store (collectively, "Missha Defendants"), as well as several CPD officers (collectively, "City Defendants"). The Court previously granted in part and denied in part motions to dismiss filed by Missha Defendants and City Defendants. Subsequently, Ruff was permitted to file her Third Amended Complaint ("TAC").[1] Missha Defendants now move to dismiss all claims asserted against them in the TAC (Dkt. No. 135), while City Defendants move to dismiss certain of Ruff's claims (Dkt. No. 129). For the reasons that follow, both motions are granted.

---

[1] At the time Ruff filed her motion for leave to amend the complaint (Dkt. No. 103), she attached a proposed "First Amended Complaint" (Dkt. No. 103-1). The Court subsequently granted Ruff leave to file an amended complaint but not the version proposed with her motion. (Dkt. No. 115.) In response, rather than filing a revised First Amended Complaint or a Second Amended Complaint, Ruff filed the "Third Amended Complaint," which is now the operative complaint.

**BACKGROUND**

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the TAC as true and views those facts in the light most favorable to Ruff as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The TAC alleges as follows.

After viewing a video of what she believed to be a racist attack against a customer at the hands of the manager of a Missha store in Charlotte, North Carolina, Ruff decided to organize a boycott of the Store in solidarity. (TAC ¶¶ 14–16, Dkt. No. 118.) Beginning in March 2017, Ruff led peaceful protests outside the Store. (*Id.* ¶¶ 16–17, 19.) Almost immediately, the protests were met with resistance from the Store's employees. (*Id.* ¶ 17.) Ruff alleges that the Store's employees and their relatives violently confronted her and other protestors on multiple occasions and made threats of further violence if the protests continued. (*Id.* ¶¶ 17–24.)

Among other incidents, on August 8, 2017, Defendant Archie Lewis, a Store employee, called the police and claimed that Ruff threatened to have him killed. (*Id.* ¶¶ 26, 44.) Based on Lewis's report, CPD officers arrested Ruff and charged her with disorderly conduct. (*Id.* ¶¶ 9, 25.) The next day, Lewis obtained a restraining order against Ruff that required her to stay more than 500 feet away from the Store. (*Id.* ¶¶ 27, 48.) The disorderly conduct charge against Ruff was ultimately non-suited on September 21, 2017, after Lewis failed to appear in court. (*Id.* ¶ 28.) As a result, the restraining order against Ruff was lifted effective as of that date. (*Id.*)

In addition, at the conclusion of an October 23, 2017 protest outside the Store, Defendant Missha Employee Sam ("Sam"),[2] a Store employee, called the police and claimed that Ruff was

---

[2] Despite having had the opportunity to conduct some discovery prior to filing the TAC, Ruff continues to refer to certain Defendants using incomplete or descriptive names.

violating the restraining order, even though it was no longer in effect. (*Id.* ¶ 30.) When the CPD officers identified in the TAC as Defendants Ofc. Lowrey and Ofc. Lowrey's Partner arrived, they immediately grabbed Ruff and attempted to handcuff her, injuring her arm in the process. (*Id.*) But the officers declined to arrest Ruff once they learned that the restraining order had been lifted. (*Id.*)

Finally, on May 31, 2019, Lewis, Sam, and Defendant Missha Employee Skinny Man ("Skinny Man"), again called the police to report that Ruff was harassing the Store's customers. (*Id.* ¶ 32.) Several officers responded to the call, including Defendants James Gochee, Edwin Drowns, Brenda Thomas, and Unknown Officer. (*Id.* ¶¶ 33, 37.) Shortly after the officers' arrived, Gochee spoke with Skinny Man about potentially arresting Ruff. (*Id.* ¶ 34.) At the end of their conversation, Gochee told Skinny Man that "If [Ruff] doesn't have ID, we'll arrest her," to which Skinny Man replied "Okay, thanks." (*Id.*) Accordingly, Gochee approached Ruff and asked whether she had identification or a permit. (*Id.* ¶ 35.) When he learned that Ruff did not have a permit, Gochee asked Ruff to put down her phone and informed her that she was being arrested for protesting without a permit. (*Id.* ¶ 36.) Ruff refused and claimed that she did not need a permit for her protest. (*Id.*) This led Gochee, Drowns, Thomas, and Unknown Officer to grab Ruff and attempt to take her phone. (*Id.* ¶ 37.) When Ruff asked why she was being restrained, Gochee responded that she was under arrest. (*Id.*) The officers then tackled Ruff to the ground, causing injuries to her shoulder, chest, and wrists. (*Id.* ¶ 40.) They then handcuffed Ruff and took her to a nearby hospital to be evaluated for a mental illness. (*Id.*)

As a result of these alleged incidents, Ruff filed the present action. Counts I and II of the TAC asserts state-law claims for negligent infliction of emotional distress ("NIED") against Lewis and Sam, respectively. Count III alleges a state-law claim for defamation *per quod* against

Lewis. Count IV asserts a state-law battery claim against Lewis's wife, Defendant Frenchie Wade-Lewis.[3] In Count V, Ruff asserts a federal claim against Ofc. Lowrey and Ofc. Lowrey's Partner pursuant to § 1983 for violation of her rights under the Fourth Amendment; and in Count VI, Ruff asserts a related failure-to-intervene claim against the same Defendants. Count VII asserts a federal claim against Gochee, Drowns, Thomas, and Unknown Officer under § 1983 for violation of her Fourth Amendment rights; and again, Ruff includes a related failure-to-intervene claim against the same Defendants in Count VIII. Count IX asserts a state-law civil conspiracy claim against Gochee, Drowns, Thomas, Unknown Officer, Sam, and Skinny Man. And finally, Count X seeks to hold Missha and Defendant Jeffrey Han[4] vicariously liable under state law for the torts of the Store's employees.

## DISCUSSION

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

---

[3] Wade-Lewis has not appeared in this action and therefore the Court has entered default against her pursuant to Federal Rule of Civil Procedure 55(a). (Dkt. No. 160.)

[4] The complaint does not identify Jeffrey Han's role at Missha. But given that Ruff seeks to hold him vicariously liable for the torts of the Store's employees, the Court assumes that Han is the owner of the Store.

As an initial matter, among the claims addressed in City Defendants' motion to dismiss are the § 1983 claims against Ofc. Lowrey and Ofc. Lowrey's Partner alleged in Counts V and VI. Ruff did not respond to the arguments for dismissal of Counts V and VI and, subsequently, the parties orally stipulated to the dismissal of those Counts in open court. Given the amount of discovery already taken in this case and Ruff's representation to this Court that she does not believe she can state a viable claim based on the allegations in Counts V and VI, those Counts are dismissed with prejudice. The remaining arguments in City Defendants' motion to dismiss are directed at Count IX's civil conspiracy claim and the claims against Unknown Officer. Like City Defendants, Missha Defendants also seek dismissal of Count IX. Their motion to dismiss is also directed at the NEID claims in Counts I and II, Count III's defamation claim, and Count X's effort to hold Missha and Han liable under a *respondeat superior* theory. The Court addresses each of the challenged Counts in turn and then concludes by addressing City Defendants' contention that the claims against Unknown Officer must be dismissed.

I.     NIED

In Counts I and II, Ruff alleges that two Missha store employees, Lewis and Sam, waged a "campaign of terror" that caused her emotional distress and an accompanying physical injury. Thus, she brings NIED claims against Lewis and Sam. For a direct victim like Ruff to state an NIED claim, she must allege, among other things, that the defendant owed her a duty. *Parks v. Kownacki*, 737 N.E.2d 287, 296–97 (Ill. 2000).

Ruff makes no attempt to articulate what duty Lewis and Sam owed to her. Instead, she denies that she had any obligation to specifically allege facts supporting the existence of a duty, since federal procedure requires only that she provide Lewis and Sam fair notice of her claims. Ruff notes that Missha Defendants' arguments for dismissal rely on Illinois state-court authority even though Illinois courts require a plaintiff to "plead facts that bring the case within the

asserted cause of action." *Village of South Elgin v. Waste Mgmt. of Ill., Inc.*, 810 N.E.2d 658, 669 (Ill. App. Ct. 2004).

But while Ruff is correct that federal notice-pleading requirements do not require a plaintiff "to plead facts to support each element of the claim," she must still "allege facts sufficient to elevate the claim from speculative to plausible." *Day v. Buckham*, No. 3:21-cv-50022, 2021 WL 5050288, at *3 (N.D. Ill. Nov. 1, 2021). And "to determine what the plaintiff must plausibly allege at the outset of a lawsuit, [courts] usually ask what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Accordingly, "as a threshold to a properly pleaded [NIED] claim, a plaintiff must set forth facts that allege the existence of a duty owed by the defendant to the plaintiff." *Sindles v. Saxon Mortg. Servs., Inc.*, No. 11 C 7224, 2012 WL 1899401, at *7 (N.D. Ill. May 22, 2012) (internal quotation marks omitted).

In Illinois, "[a] relationship between two individuals may give rise to a duty to avoid [NIED] when the defendant's relationship 'carries with it a foreseeable, and unreasonable, risk of causing emotional or mental harm.'" *Gonzalez v. City of Chicago*, No. 16-cv-08012, 2018 WL 1561735, at *9 (N.D. Ill. Mar. 30, 2018) (quoting *Corgan v. Muehling*, 574 N.E.2d 602, 607 (Ill. 1991)). Again, Ruff does not attempt to explain what duty that Lewis and Sam owed her. Nor can the Court discern on its own what duty those two Missha employees owed to Ruff, who was not only not a customer of the Store but was actively working to dissuade others from shopping there. Consequently, the NIED claims in Counts I and II are dismissed.

## II. Defamation

Next, Missha Defendants move to dismiss Count III, which asserts a defamation *per quod* claim against Lewis. In Illinois, a "statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers the person in the eyes of the community or deters third persons from associating with her." *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). To state a defamation claim, a plaintiff must allege facts showing: (1) a false statement by the defendant about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) that publication caused damages. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006).

There are two recognized types of defamatory statements in Illinois: defamation *per se* and defamation *per quod*. *Naleway v. Agnich*, 897 N.E.2d 902, 908 (Ill. App. Ct. 2008). A defamatory statement is actionable *per se* where "its harm is obvious and apparent on its face." *Solaia Tech.*, 852 N.E.2d at 839. Illinois recognizes five categories of statements considered defamatory *per se*:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Id.* On the other hand, a statement may be defamatory *per quod* where the statement is either "defamatory on its face, but does not fall within one of the limited categories of statements that are actionable *per se*," or not defamatory on its face but can be shown to have injurious meaning by resort to extrinsic evidence. *Bryson*, 672 N.E.2d at 1221. Unlike in a defamation *per se* action, in a *per quod* action, the plaintiff must plead special damages resulting from the statement—

meaning "actual damage to her reputation and pecuniary loss resulting from the defamatory statement." *Id.* at 1222.

Although a plaintiff is not required to allege the language of a purported defamatory statement verbatim, she must "be specific enough to allow the defendant to respond appropriately, which includes being able to determine whether the language is defamatory." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 919 (N.D. Ill. 2007). Missha Defendants argue that Ruff's allegation that, on August 9, 2017, Lewis took out a restraining order against Ruff predicated on the false allegation that she "threatened him" (TAC ¶ 48), fails to plead a defamatory statement adequately because the substance of the allegedly false accusation is too uncertain. However, Missha Defendants fail to consider that allegation in context: the day before obtaining the restraining order, Lewis is alleged to have falsely told the police that Ruff "threatened to have him killed." (*Id.* ¶ 26.) Viewing the allegations in the light most favorable to Ruff, it is reasonable to infer that the threat to which Lewis was referring in obtaining the restraining order was Ruff's threat to have him killed. That statement has sufficient specificity to allow Lewis to respond. While Ruff characterizes her defamation claim as *per quod*, the Court finds that Lewis's purportedly false accusation that Ruff threatened to have him killed is the type of statement that may be considered defamatory *per se*, since it tends to impute that Ruff committed a crime. That renders unavailing Missha Defendants' additional contention that Ruff fails to allege special damages sufficiently.

Nonetheless, the Court must dismiss Ruff's defamation claim. Despite the fact that neither party has raised the issue, the Court cannot ignore that an absolute privilege applies to the allegations here. In particular, Lewis first reported Ruff's supposed threat to the police and then sought a restraining order based on that threat. "It has long been held that statements made to law

8

enforcement officials, for the purpose of instituting legal proceedings, are granted absolute privilege." *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1055 (Ill. App. Ct. 2009) (internal quotation marks omitted). The applicability of this privilege precludes a defamation action, "even where malice is alleged." *Id.* Moreover, the absolute privilege has been found to apply "in the institution of or during the course and as part of, a judicial proceeding," criminal or civil, "if the matter has some relation to the proceeding." *Razavi v. Sch. of the Art Inst. of Chi.*, 122 N.E.3d 361, 375 (Ill. App. Ct. 2018) (quoting Restatement (Second) of Torts § 587). Lewis's statements in obtaining the restraining order are therefore subject to the absolute privilege. Consequently, Count III must be dismissed with prejudice.

### III. Civil Conspiracy

Ruff's civil conspiracy claim in Count IX is asserted against a combination of Missha Defendants and City Defendants. In particular, Ruff alleges that on May 31, 2019, CPD officers Gochee, Drowns, Thomas, and Unknown Officer conspired with Missha employees Sam and Skinny Man with the purpose of preventing Ruff from continuing her protest activities outside the Store by physically removing her from the premises and taking her to a nearby hospital for a mental health evaluation. The Court previously dismissed Ruff's civil conspiracy claim for failure to allege any facts from which it could reasonably be inferred that the participant Defendants acted with a common, unlawful purpose. Both Missha Defendants and City Defendants argue that Ruff's repleaded civil conspiracy claim fails to remedy that deficiency.

In Illinois, to state a civil conspiracy claim, a plaintiff must allege: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). An agreement is a "necessary and important

9

element" of a civil conspiracy claim. *Id.* (internal quotation marks omitted). To be liable as a conspirator, a defendant must "understand[] the general objectives of the conspiratorial scheme, accept[] them, and agree[], either explicitly or implicitly to do [their] part to further those objectives." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994).

To show the existence of a conspiratorial agreement, Ruff alleges that CPD officer Gochee spoke with Missha employee Skinny Man about "possible grounds to arrest the plaintiff." (TAC ¶ 60.) That conversation concluded with Gochee telling Skinny Man that "If [Ruff] doesn't have ID, we'll arrest her," to which Skinny Man replied "Okay, thanks." (*Id.*) What is absent from the TAC's allegations is any suggestion that Skinny Man knew that Gochee planned to act unlawfully in arresting Ruff. In her briefs in opposition to the motions to dismiss, Ruff sets forth a longer, unofficial version of the conversation between Gochee and Skinny Man. To the extent those extrinsic details of the conversation alleged in the TAC are properly considered in connection with a motion to dismiss, all they show is Gochee considering whether he had any *legitimate* basis to arrest Ruff. Indeed, Gochee tells Skinny Man that he intended to "do it by the book, 'cause we're on body-worn cameras." (Pl.'s Resp. to City Defs.' Mot. to Dismiss at 4, Dkt. No. 147.) Whatever Gochee's true intent was, there is nothing in his conversation with Skinny Man that would give Skinny Man reason to believe that Gochee intended to act unlawfully in arresting Ruff. Nor is Skinny Man simply saying "Okay, thanks" indicative of his agreement knowingly to participate in any scheme. And the TAC is devoid of allegations suggesting that the other Defendants named in Count IX entered into the conspiracy. For these reasons, Count IX is dismissed.

## IV. *Respondeat Superior* Liability of Missha and Han

Count X of the TAC seeks to hold Missha and Han vicariously liable for the torts of their agents: Lewis, Sam, and Skinny Man. However, the Court has now dismissed all Counts

involving the Store's employees. For that reason, there is nothing for which Missha and Han can be held vicariously liable. *E.g.*, *Turner v. M.B. Fin. Bank*, No. 14-cv-9880, 2017 WL 4390367, at *6 (N.D. Ill. Oct. 3, 2017) ("[I]f the underlying claim against [the agent] is not viable, there is no freestanding, independent basis to pursue vicarious liability against [the principal]."). Therefore, Count X is dismissed.

      **V.    Unknown Officer Defendant**

Among the claims remaining in the TAC are the § 1983 claims alleged in Counts VII and VIII. City Defendants do not, at this time, challenge the viability of those claims as to the Defendants whose identities are known. Nonetheless, they note that the identity of one of the named Defendants remains unknown—he is identified only as Unknown Officer. City Defendants claim that the time to identify Unknown Officer has long since passed, and the claims against that Defendant therefore must be dismissed because the statute of limitations has run.

Ruff offers no response to City Defendants' argument that the claims against Unknown Officer are time-barred and therefore any such arguments are waived. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). In any case, there is no question that the statute of limitations has run on the claims against Unknown Officer. The § 1983 claims in Counts VII and VIII are subject to a two-year statute of limitations; that period has elapsed with the identity of Unknown Officer still unknown. That means that if Ruff is eventually able to ascertain Unknown Officer's identity, she cannot amend the complaint to name that individual as a Defendant and have it relate back to an earlier, timely pleading. *Herrera v. Cleveland*, 8 F.4th 493, 498 (7th Cir. 2021) ("[W]e hold that naming a John Doe defendant does not constitute a 'mistake' within the meaning of [Federal Rule of Civil Procedure] 15(c)(1)(C)(ii)."). In short, the statute of limitations has run on Ruff's claims against Unknown Officer and there is no reason to believe

that they can be salvaged. Consequently, the claims against Unknown Officer are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, City Defendants' partial motion to dismiss (Dkt. No. 129) and Missha Defendants' motion to dismiss (Dkt. No. 135) are granted. Counts I, II, IX, and X are dismissed; Counts III, V, and VI are dismissed with prejudice; and the claims against Defendant Unknown Officer are dismissed with prejudice.

ENTERED:

Dated: July 5, 2023

_____
Andrea R. Wood
United States District Judge